**MASSACHUSETTS INSTITUTE OF TECHNOLOGY, and Massachusetts General Hospital, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 00–292C, 01–434C.**

United States Court of Federal Claims.

Jan. 26, 2007.

---

■■■■■■■■■■

Owen Gallagher, Boston, MA, for plaintiff Massachusetts Institute of Technology.

Joseph L. Doherty, Jr., Boston, MA, for plaintiff Massachusetts General Hospital.

Brian M. Simkin, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant.

## ORDER GRANTING UNITED STATES' MOTION FOR VACATUR

FIRESTONE, Judge.

At issue before the court is the United States' ("government" or "defendant") unopposed motion for vacatur of the court's opinion ("2002 Opinion" or "Opinion") reported at *Sweet v. United States,* 53 Fed.Cl. 208 (2002). The government initially filed its motion on September 12, 2006, contending that the 2002 Opinion was based upon facts and/or events that had subsequently changed, and additionally that the case and controversy between the parties had become moot. On September 25, 2006, the court issued an order staying consideration of the government's motion pending consummation of a settlement agreement between the government and the plaintiffs in the above-captioned consolidated cases. On December 5, 2006, the government filed a renewed unopposed motion for vacatur, representing that all of the settlements in the consolidated cases are now complete. The court subsequently requested supplemental briefing from the government regarding the procedural authority governing a motion for vacatur. For reasons discussed below, the court **GRANTS** the government's motion for vacatur, and hereby **VACATES**

its order and opinion reported at *Sweet v. United States,* 53 Fed.Cl. 208 (2002).

## BACKGROUND

In these consolidated cases, the plaintiffs, Massachusetts Institute of Technology ("MIT") and Massachusetts General Hospital ("MGH") (collectively "plaintiffs"),[1] contended that the government was required under the Price–Anderson Act to indemnify them for claims filed against them in *Heinrich v. Sweet,* No. CIV. A. 97–12134–WGY (D.Mass. 1995) ("*Heinrich* litigation").[2] The *Heinrich* litigation stemmed from medical trials performed by a number of doctors and institutions in the 1950s and 1960s involving boron neutron capture therapy, which was at the time an experimental treatment for specific types of brain cancer. The plaintiffs in the *Heinrich* litigation claimed that MIT and MGH, among others, performed the medical trials on their relatives without informed consent. On October 15, 1999, the jury in the *Heinrich* litigation returned a verdict against MGH for wrongful death and negligence, and found MIT not liable on any of the claims. MGH was held jointly and severally liable with William H. Sweet, M.D., for $3,000,000, which was later reduced through post-trial motion to $750,000. *Heinrich v. Sweet,* 118 F.Supp.2d 73, 83 (D.Mass.2000).

On May 22, 2000, MIT and Dr. Sweet filed a complaint in this court; on July 27, 2001, MGH filed a complaint in this court. The plaintiffs sought indemnification from the government for the litigation costs incurred in and the liability awards stemming from the *Heinrich* litigation under the Price–Anderson Act. *Sweet,* 53 Fed.Cl. at 210. The plaintiffs also sought declaratory relief regarding the government's duty to indemnify any future liability awards related to the

---

1.  Initially, William H. Sweet, M.D. was also a plaintiff in these consolidated cases. However, on May 15, 2006, Elizabeth Dutton Sweet and Frederick H. Grein, Jr., in their capacities as executors under the will of William H. Sweet, filed a notice of acceptance of defendant's offer of judgment by the plaintiff.

2.  The background and verdicts in that litigation are set out in a number of opinions issued by Chief Judge William G. Young: *Heinrich v.*

*Sweet,* 44 F.Supp.2d 408 (D.Mass.1999); *Heinrich v. Sweet,* 49 F.Supp.2d 27 (D.Mass.1999); *Heinrich v. Sweet,* 62 F.Supp.2d 282 (D.Mass. 1999); *Heinrich v. Sweet,* 83 F.Supp.2d 214 (D.Mass.2000); and *Heinrich v. Sweet,* 118 F.Supp.2d 73 (D.Mass.2000).

The Massachusetts District Court determined that jurisdiction was proper under the Price–Anderson Act in *Heinrich v. Sweet,* 62 F.Supp.2d at 298.

medical trials. The government subsequently filed a motion to dismiss the plaintiffs' claims for declaratory relief and a motion for partial summary judgment. On August 7, 2002, in the 2002 Opinion, this court granted the government's motion to dismiss the plaintiffs' claims for declaratory relief and denied the government's motion for summary judgment, holding that the plaintiffs were entitled to indemnification of litigation costs generated by the *Heinrich* litigation. *Id.* at 227–228.

On August 27, 2002, shortly after this court issued the 2002 Opinion, the First Circuit, in *Heinrich v. Sweet,* 308 F.3d 48 (1st Cir.2002), vacated the jury verdict against MGH in *Heinrich* and directed that judgment be entered in MGH's favor. *Id.* at 69–70. Subsequently, this court considered the issue of whether the government's duty to reimburse the plaintiffs for legal expenses incurred during the *Heinrich* litigation would be diminished to the extent that the plaintiffs' legal expenses had been paid by insurance carriers or other sources. On January 11, 2005, the court held that the plaintiffs would not be completely barred from seeking indemnification by the government even if their legal expenses had been covered by their insurers; however, the court found that the plaintiffs would have to demonstrate that their insurers were entitled to subrogation by the government for their legal fees. *Sweet v. United States,* 63 Fed.Cl. 591 (2005) ("2005 Opinion").

## DISCUSSION

■ The court has the limited authority, under Rule 60(b)(5) of the Rules of the United States Court of Federal Claims ("RCFC"), to "relieve a party … from a final judgment, order, or proceeding." The government's motion for vacatur seeks relief from a *non-final* order; the court's authority to consider such a motion is not subject to the requirements of RCFC 60(b)(5), but, according to the government, is instead derived

from the court's "inherent powers." While no decision in this court has specifically considered its "inherent power" to vacate non-final orders, federal district courts possess analogous "inherent powers" which have been widely acknowledged. *See, e.g., Zimzores v. Veterans Admin.,* 778 F.2d 264, 266 (5th Cir.1985); *United States v. Jerry,* 487 F.2d 600, 605 (3rd Cir.1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."); *Bon Air Hotel v. Time, Inc.,* 426 F.2d 858, 862 (5th Cir.1970) (holding that because the district court's denial of a motion for summary judgment "was interlocutory, 'the court at any time before final decree (could) modify or rescind it.' ") (quoting *John Simmons Co. v. Grier Brothers Co.,* 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)). The Advisory Committee Notes to the 1946 Amendments to the Federal Rules of Civil Procedure ("FRCP") regarding FRCP 60(b), which is nearly identical to RCFC 60(b)(5), stated that:

> The addition of the qualifying word "final" [in Rule 60(b)] emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

■ Based upon the foregoing, the court finds that it has an "inherent power" analogous to that retained by the federal district courts to review its interlocutory, non-final orders, and now considers the government's motion for vacatur pursuant to that "inherent power." [3]

■ The government first submits that the 2002 Opinion should be vacated because

---

**3.** Federal circuit courts (and other courts of appellate jurisdiction) hold a separate, statutory authority to vacate any judgment or other order brought before them for review under 28 U.S.C. § 2106 (2000), which provides:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate,

set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

it relied upon facts and events that subsequently changed. Specifically, the government contends that, because a judgment in the *Heinrich* litigation had been entered against MGH at the time the 2002 Opinion was issued, and because the Opinion relied upon the assumption that the *Heinrich* judgment was valid (including the holding that jurisdiction was proper under the Price–Anderson Act), the vacatur of the judgment against MGH on appeal materially changed the premise of the Opinion. In addition, the government claims that the 2002 Opinion relied upon the fact that the plaintiffs had incurred and paid legal expenses in the *Heinrich* litigation, and that the court's subsequent discovery that the plaintiffs' expenses had been paid by their insurers further changed the facts upon which the 2002 Opinion was based.

The government, in the alternative, contends that the court should vacate the 2002 Opinion because the case and controversy between the parties regarding the application of the Price–Anderson Act is now unreviewable. The government argues that the primary issue underlying the original dispute was whether the government was obligated to indemnify the jury awards in the *Heinrich* litigation, and that this issue is now moot because the jury awards against the plaintiffs were vacated by the First Circuit. The government, relying on *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), asserts that because the holding in the 2002 Opinion regarding the government's indemnification obligations is now moot because the *Heinrich* litigation jury awards were vacated, a vacatur of the 2002 Opinion would be appropriate. *Id.* at 40–41, 71 S.Ct. 104 (holding that vacatur is warranted "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences.").

The government distinguishes the circumstances at hand with those in *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), in which the Supreme Court cautioned against vacatur of decisions that had become moot based on settlement alone. *Id.* at 29, 115 S.Ct. 386. In *U.S. Bancorp*, the Court considered whether to grant a party's request to vacate a judgment of the Court of Appeals on the grounds that a settlement between the parties had mooted the central issue in the case. The Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review .... the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course." *Id.* The government contends that, because in this case the central issue was mooted due to reversal of the jury awards in the *Heinrich* litigation, and not due to settlement, vacatur is appropriate notwithstanding the holding in *U.S. Bancorp*. The government further contends that the factors considered in *U.S. Bancorp*, including whether the judgment for which vacatur was sought provided value to the legal community and whether vacatur would "disturb the orderly operation of the federal judicial system," *id.* at 27, 115 S.Ct. 386, lend in favor of vacatur of the 2002 Opinion because the 2002 Opinion was based on facts that have since changed. Finally, the government asserts that the remaining, pertinent issues in the plaintiffs' claims were addressed by the 2005 Opinion, which is still available to the legal community as a whole.

Although vacatur of an interlocutory opinion is left to this court's discretion under its inherent authority, the court is guided by the standards applied by other courts in evaluating the government's request. The Federal Circuit has stated that, in determining whether vacatur is appropriate, a court must evaluate the totality of the circumstances and balance the equities. *Kaw Nation v. Norton*, 405 F.3d 1317, 1323–24 (Fed.Cir.2005) ("[A]ny appraisal of whether exceptional circumstances warrant vacatur requires a balancing of the equities, and, in particular, a weighing of the public interest in preserving 'the orderly operation of the federal judicial system' versus the private interests of the parties seeking vacatur.") (quoting *U.S. Bancorp*, 513 U.S. at 27, 115 S.Ct. 386 (1994)). In *Kaw Nation*, the Federal Circuit considered whether to simply dismiss the case on appeal or to also vacate a judgment of the Department of the Interior Board of Contract Appeals ("IBCA"), and found that vacatur of the judgment on mootness grounds

was appropriate. *Id.* at 1324. The court evaluated the potential precedential effect of the decision and the burden the decision might place on the interests of third parties who did not play a role in the issue becoming moot, and concluded that "the equities favor[ed] vacating judgment." *Id.*

Here, the court finds that the equities and the totality of the circumstances also weigh in favor of vacatur of the court's 2002 Opinion. The court agrees that the central issue analyzed in the 2002 Opinion has become moot, not only through the settlement by the parties, but also because the jury awards in the *Heinrich* litigation were vacated on appeal. Therefore, the mootness is not based upon a settlement alone. In addition, the court finds that vacatur of the 2002 Opinion would not be detrimental to the operation of the judiciary. A determination regarding the proper scope of the indemnity provisions of the Price–Anderson Act should await another case in which the litigation triggering the Act's indemnity provisions squarely address the parties' liability under that Act.

## CONCLUSION

For the reasons stated above, the court grants the government's motion for vacatur, and vacates its order and opinion reported at *Sweet v. United States*, 53 Fed.Cl. 208 (2002).

**IT IS SO ORDERED.**