**Steve HANSON, Plaintiff,**

v.

**The SANGAMON COUNTY SHERIFF'S DEPARTMENT, Neil Williamson, Sangamon County Sheriff, Individually and in his Official Capacity, and The Circuit Court of Sangamon Count, Defendants.**

**No. 97–3175.**

United States District Court, C.D. Illinois, Springfield Division.

Jan. 28, 1998.

Matthew D. Cohen, Lei Ann Marshall-Cohen, Howard A. Rosenblum, Monahan & Cohen, Chicago, IL, for plaintiff.

Patrick J. Londrigan, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Plaintiff, who is deaf, was arrested for possession of cannabis.

Although the Sheriff's Department knew that he was deaf and although the department had hearing impaired equipment available, the department failed to provide Plaintiff with any means with which to communicate with friends and/or relative in order to post bond.

Has Plaintiff stated a cause of action upon which relief can be granted under these circumstances?

Yes.

### I. FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Plaintiff, Steve Hanson, is profoundly deaf. He has a limited ability to read lips and a limited ability to understand written communications. He primarily relies upon the use of sign language to communicate.

On June 4, 1995, at approximately 2:00 a.m., officers from the Springfield Police Department arrested Hanson for possession of cannabis. At that time, Hanson informed the officers that he is deaf. However, the officers did not attempt to communicate with him; rather, the officers placed him into a police van with approximately eight to ten other arrestees and transported him and the others to the Sangamon County Jail.

While being processed at the jail for arrest, officers of the Sangamon County Sheriff's Department verbally told Hanson that he was being charged with the possession of cannabis. However, the officers did not advise Hanson of the amount of bail which he would need to be released pending his trial. Although the officers informed Hanson that he could make one telephone call, Hanson informed the officers that due to his deafness, he was unable to use a conventional telephone. In spite of his inability to use a conventional telephone and his requests for alternative assistance, the Sangamon County Sheriff's Department failed to provide Hanson with access to an interpreter, to a text telephone device ("TDD"), or to a TDD directory. Throughout the night, Hanson attempted to notify the officers of his need for alternative assistance in contacting friends and/or relatives, but it was to no avail.

By 6:00 a.m. that same morning, all other arrestees who were transported to and processed for arrest at the jail along with Hanson had been released. At some point after 6:00 a.m., Officer Martha Brown assisted Hanson in making a telephone call to his roommate and to his neighbor for the purpose of bringing money to bail him out of jail. Hanson was not allowed to use an accessible telephone in private or in a confidential manner, however. After relying on Officer Brown for his telephone communications, the Sangamon County Sheriff's Department released Hanson approximately thirteen hours after his arrest and nine hours after all other persons transported and processed along with him had been released.

On July 7, 1997, the Circuit Court of Sangamon County found Hanson guilty on the charge of possession of cannabis. Accordingly, Hanson has initiated the above-captioned case claiming that Defendants have violated his rights.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). Mere conclusions, without supporting factual allegations, are insufficient to support a claim for relief. *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir.1978). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

Count I of Plaintiff's First Amended Complaint alleges that the Sangamon County Sheriff's Department violated Plaintiff's rights protected by the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 *et seq.* Count II states that the Department violated Plaintiff's rights protected by the Rehabilitation Act. 29 U.S.C. § 794 *et seq.* Finally, Count III alleges that Sheriff Williamson violated Plaintiff's rights protected by 42 U.S.C. § 1983.[1]

### A. *COUNTS I & II*

The Sangamon County Sheriff's Department argues that Counts I & II of Plaintiff's First Amended Complaint fail to state a cause of action upon which relief may be

granted, and thus, the Court should dismiss those Counts pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the Sheriff's Department argues that those Counts should be dismissed because the requirements of the ADA and the Rehabilitation Act do not apply to prisoners and county jails. The Department also asserts that even if those Acts do apply in this case, Plaintiff has failed to allege a violation of a protected right and has failed to state a claim cognizable under the Acts. Plaintiff argues that the ADA and the Rehabilitation Act is applicable in the case at bar and that he has pleaded all of the essential elements necessary to state a cause of action under both Acts.

The Court finds that when taking all of the facts in a light most favorable to Plaintiff, Plaintiff has stated a cause of action upon which relief may be granted in both Counts. In a case factually similar to the one at bar, the United States Court of Appeals for the Seventh Circuit held that the ADA and the Rehabilitation Act apply to state prisoners and prisons. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir.1997). Therein, the Seventh Circuit held that the "only criterion for eligibility is that the individual be 'qualified' in a sense unrelated to his jural status." *Id.* at 484. The Seventh Circuit further opined that disabled prisoners "have the same interest in access to the programs, services, and activities available to the other inmates of their prison as disabled people on the outside have to counterpart programs, services, and activities available to free people." *Id.* at 486. Therefore, as long as Plaintiff has pleaded all of the essential elements to state a cause of action under the ADA and the Rehabilitation Act, the Sheriff's Department's motion should be denied.[2]

Title 42 U.S.C. § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from

---

1. Counts IV and V are directed against the Circuit Court of Sangamon County. However, the Circuit Court has not joined in the motion to dismiss, and therefore, Counts IV and V are not at issue here.

2. As in *Crawford*, the Court does not need to address Plaintiff's Rehabilitation Act claim sepa-

rately. "The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance—[which Plaintiff has alleged]. Since the ADA has a broader scope, we shall confine our discussion to it." *Crawford*, 115 F.3d at 483 (citations omitted).

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The ADA defines a qualified individual with a disability as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2); *Crawford,* 115 F.3d at 483.

Plaintiff, who is deaf, is clearly a "qualified individual with a disability."

Furthermore, the Sangamon County Jail is a "public entity" as that phrase is defined in the ADA. *Crawford,* 115 F.3d at 483. Lastly, Plaintiff has sufficiently alleged that he was denied services and activities provided by the Sheriff's Department due to his disability, *i.e.* an opportunity to post bond and an opportunity to make a telephone call. *See* 725 ILCS § 195/3; *see Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir.1991) (holding that in certain limited circumstances, unreasonable restrictions on a detainee's access to a telephone may also violate the Fourteenth Amendment).

Although the Sheriff's Department presented other arrestees with these opportunities, it denied Plaintiff the same opportunities even though he could have participated in them with the assistance of a TDD, a TDD directory, and/or a person qualified in sign language. The regulations to subtitle A of title II of the ADA require "public entit[ies to] take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). These steps include furnishing auxiliary aids and other services such as TDD's and qualified interpreters. 28 C.F.R. § 35.160(b); 28 C.F.R. § 35.104. The Sheriff's Department provided no assistance to Plaintiff.[3]

Accordingly, the Court finds that Counts I & II of Plaintiff's First Amended Complaint state a *prima facie* case. Thus, the Sangamon County Sheriff's Department's motion to dismiss those Counts is denied.

## B. *COUNT III*

Sheriff Williamson claims that Count III should be dismissed because it fails to state a claim upon which relief can be granted. Alternatively, he argues that he is protected from this suit based upon the doctrine of qualified immunity. Plaintiff argues that Sheriff Williamson maintained a policy which violated the ADA and the Rehabilitation Act, and therefore, he is liable pursuant to § 1983. Moreover, Plaintiff asserts that Sheriff Williamson is not protected by the doctrine of qualified immunity.

The Court finds that when taking all of the facts in a light most favorable to Plaintiff, Plaintiff has stated a *prima facie* case pursuant to 42 U.S.C. § 1983. Moreover, the Court finds that Sheriff Williamson is not protected from liability based upon the doctrine of qualified immunity.

### 1. *42 U.S.C. § 1983*

"Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994), quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Moreover, "[a] municipal policy or custom is a necessary requirement to establishing liability in a defendant's individual or official capacity." *Sivard v. Pulaski County,* 17 F.3d 185, 188 (7th Cir.1994). Boilerplate allegations of an unlawful municipal policy, lacking factual support, are insufficient. *Rodgers v. Lincoln*

---

**3.** Although Officer Brown eventually assisted Plaintiff in placing a telephone call, Plaintiff alleges that Officer Brown is not a qualified sign language interpreter.

*Towing Serv., Inc.,* 771 F.2d 194, 202 (7th Cir.1985). Finally, a sheriff may be held liable under § 1983 for establishing a policy that leads to the plaintiff's injury. *Ryan v. County of DuPage,* 45 F.3d 1090, 1092 (7th Cir.1995).

■ In the case *sub judice,* Plaintiff has alleged all of the essential elements to maintain a § 1983 action. Count III alleges that Sheriff Williamson was acting under color of state law (*i.e.* as the Sangamon County Sheriff) when he violated Plaintiff's rights. Second, Count III alleges that Sheriff Williamson violated Plaintiff's rights secured by federal law, *i.e.,* his rights protected by the ADA and the Rehabilitation Act. Finally, Count III alleges that Sheriff Williamson failed to implement policies and procedures to meet the County's requirements under the ADA and Rehabilitation Act. Specifically, the Amended Complaint claims that Sheriff Williamson failed to provide a TDD for deaf arrestees, failed to ensure that deaf arrestees received equal effective communication regarding arrest procedures and the right to post bond pending trial, and maintained an express policy of forbidding officers from allowing deaf arrestees to use the TDD which was stored in Officer Martha Brown's office. Accordingly, the Court finds that Plaintiff has established a *prima facie* § 1983 case against Sheriff Williamson.

### 2. *Qualified Immunity*

■ Sheriff Williamson argues that he is protected from this suit based upon the doctrine of qualified immunity. Qualified immunity shields government officials who are performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether a defendant will be protected by qualified immunity "turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S., at 819, assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.,* at 818." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the United States Supreme Court stated in *Anderson:*

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640 (citations omitted). Accordingly, in deciding whether an official is protected by qualified immunity, the district court must determine: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " *Hill v. Shelander,* 992 F.2d 714, 717 (7th Cir.1993) quoting *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir.1988); *Burns v. Reed,* 44 F.3d 524, 526–27 (7th Cir.1995).

■ Sheriff Williamson argues that there were no analogous cases to the one at bar and that it was not established on June 4, 1995, that the ADA and/or the Rehabilitation Act applied to county jails. Thus, Sheriff Williamson asserts that he is protected by qualified immunity because there were no clearly established constitutional standards on the date when the alleged violations occurred.

However, Sheriff Williamson's argument as to the nonexistence of any prior case law directly on point has previously been considered and rejected by the Seventh Circuit. The Seventh Circuit has opined:

> The defendants bemoan the fact that there is no prior case directly on point with facts identical to this case. Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point. *See McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992). The question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful.

*Nabozny v. Podlesny,* 92 F.3d 446, 456 (7th Cir.1996). While there may have been a lack

of case law directly on point, the Acts themselves had been enacted by Congress several years prior to June 4, 1995, and at least two Courts of Appeal had held that the Rehabilitation Act is applicable to prisoners and prisons. *Bonner v. Lewis,* 857 F.2d 559, 562 (9th Cir.1988); *Harris v. Thigpen,* 941 F.2d 1495, 1522 n. 41 (11th Cir.1991). Accordingly, the Court believes that a reasonable sheriff would have assumed that if the Rehabilitation Act, a more narrow statute, is applicable to prisoners and prisons that the ADA, an almost identical yet broader statute, would likewise apply.

Furthermore, the federal regulations which effectuate the ADA and the Rehabilitation Act were also in effect prior to June 4, 1995. As discussed above, these regulations require officials to take steps to ensure that services and programs available to non-disabled persons are likewise available to persons with a disability. *See* 28 C.F.R. § 35.160; § 35.104.

Accordingly, the Court finds that Sheriff Williamson's policies, procedures, and conduct allegedly violated Plaintiff's rights protected by the ADA and the Rehabilitation Act and that the standards for the alleged violations were clearly established prior to June 4, 1995. Moreover, the Court believes that a reasonable sheriff would have realized his obligations to implement policies and procedures to bring the county jail into compliance with the ADA and the Rehabilitation Act and would have realized that his policy of denying the use of the TDD in Officer Brown's office to an arrestee was unlawful. Therefore, the Court finds that Sheriff Williamson is not protected from this suit based upon the doctrine of qualified immunity.

*Ergo,* Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is DENIED.